UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. 4:18-cr-00103 |
| | § | |
| MARCELLE DA ROCHA GUIMARAES, | § | |
| CARLOS OTAVIO GUIMARAES, and | § | |
| JEMIMA DA ROCHA GUIMARAES | § | |

**DEFENDANTS' JOINT MOTION FOR NEW TRIAL AND MEMORANDUM OF LAW**

Defendants Carlos and Jemima Guimaraes made a Rule 29 Motion for Judgment of Acquittal based on the fact that the Government failed to prove each and every element of their complicity in the international parental kidnapping charge under 18 U.S.C. § 1204 beyond a reasonable doubt. Because this Court denied that motion, Defendants file this Rule 33 Motion for New Trial in the alternative.

Defendants respectfully move this Court to order a new trial because: (1) the weight of the evidence in this case is clearly against the verdict as the Defendants offered unrebutted evidence—greater than the required preponderance of evidence—to support their affirmative defense of Defendants having a reasonable belief that Marcelle Guimaraes was fleeing domestic violence;[1] and, (2) the interest of justice requires the granting of a new trial based on four distinct but intertwined errors which prevented the Defendants from fully presenting their domestic-violence defense.

---

[1] The testimony of Christopher Brann, M.D., Jared Woodfill, and Ricardo Ramos establishing this reasonable belief went uncontradicted by other witness testimony or by Government exhibits. *See* Docket No. 136.

These errors were the Court's refusal to:

1. Admit Marcelle Guimaraes's affidavit and exhibits attached to Defense Exhibit 16-A detailing domestic violence[2];

2. Admit DX022[3], the divorce discovery responses from Marcelle Guimaraes that her parents had knowledge of;

3. Admit DX328[4], the threatening voice-mail message from Christopher Brann, M.D.; and,

4. Provide clarification to the jurors' questions 2 and 3, especially the refusal to clarify the distinction between "mutual combat" and "domestic violence," and to explain that they are not mutually exclusive.

These reasons are set forth in detail below.

**I.      Standard For Granting a Rule 33 Motion For New Trial.**

Rule 33 of the Federal Rules of Criminal Procedure states that upon the Defendant's motion "the court may vacate any judgment and grant a new trial if the interest of justice so requires." The Court enjoys "considerable discretion"[5] in determining whether to grant such a motion because a Rule 33 motion "'goes to the fairness of the trial rather than to the question of guilt or innocence.'"[6] Although the generally accepted standard is that a new trial should generally not be granted unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict, the Court's decision to grant a motion for new trial is reviewed on appeal only for an abuse of discretion.[7]

---

[2] *See* Appendix A.

[3] *See* Appendix B.

[4] *See* Appendix F.

[5] *United States v. Simmons*, 714 F.2d 29, 31 (5th Cir. 1983).

[6] *United States v. McRae*, 795 F.3d 471, 481 (5th Cir. 2015) (quoting *United States v. Williams*, 613 F.2d 573, 575 (5th Cir. 1980)).

[7] *United States v. Wall*, 389 F.3d 457, 465 (5th Cir. 2004) (noting that the standard "is necessarily deferential to the trial court because the appellate court has only read the record and, unlike the trial court, did not see the impact of witnesses on the jury or observe the demeanor of witnesses."); *see also United States v. Tarango*, 396 F.3d 666, 675 (5th Cir. 2005) (trial judge's grant of defendant's motion for new trial was not an abuse of discretion).

Rule 33 exists because, in the course of trials, human beings– including juries and judges– occasionally make mistakes. This is the final opportunity for the Court, as Johnny-on-the-Spot, to ensure that defendants receive a fair trial; not a perfect trial, but a fair one.

## II. The Government's Evidence Is Insufficient Under Rule 33 As It Is Manifestly "Against The Weight Of The Evidence."

A Rule 29 Motion for Acquittal and a Rule 33 Motion for New Trial based on the weight of the evidence are governed by very different standards:

> The Motion for New Trial involves a much broader standard of review than a Motion for Acquittal. A verdict may well be against the great weight of the evidence, but, nevertheless, be substantial enough to permit reasonable jurors to draw an inference of guilt. In a Motion for New Trial, the trial judge can consider the credibility of the witnesses and the weight of the evidence to ensure that there is not a miscarriage of justice.[8]

In deciding a motion for new trial, a district judge may act as a "thirteenth juror," assessing the credibility of the evidence and the weight of the evidence.[9] Setting aside a jury's verdict in the interest of justice is appropriate when "the evidence brought forth at trial may tangentially support a guilty verdict, but in actuality, 'preponderates sufficiently heavily against the verdict such that a miscarriage of justice may have occurred.'"[10]

The jury acquitted the Defendants of any conspiracy, so the jury necessarily found that Marcelle Guimaraes's parents did not enter into any agreement with her to commit the offense of international parental kidnapping. The only possible rational basis for the verdict on the substantive charge is that the jury rejected the affirmative defense that the Guimaraeses reasonably

---

[8] *United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979), *aff'd*, 633 F.2d 219 (6th Cir. 1980).

[9] *United States v. Herrera*, 559 F.3d 296, 303 (5th Cir. 2009); see also *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir.2005) (affirming trial judge's grant of motion for new trial of defendant convicted of aiding and abetting fraudster) ("In determining whether to grant the motion, the district court must carefully weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial, but must not entirely usurp the jury's function, or simply set aside a jury's verdict because it runs counter to the result the district court believed was more appropriate.") (internal quotations and citations omitted).

[10] *Tarango*, 396 F.3d at 672.

3

believed their daughter fled from domestic violence. Such a conclusion flies in the face of the weight and preponderance of the evidence, including the Government's own concession that the trial record contained evidence of an incidence or pattern of domestic violence,[11] and this Court's agreement that the record contained such evidence.[12]

The very same items of evidence that supported the Defendant's Rule 29 motion, also support their Rule 33 motion, but now the Court may (in fact, must) judge the credibility of that evidence and weigh it against the credibility of any countervailing evidence.[13] Now the evidence is not viewed in the light most favorable to the Government. Rather this Court must independently weigh the evidence and act as a "thirteenth juror" to the extent necessary to avoid a miscarriage of justice.[14]

If this Court should conclude that the evidence does not "preponderate heavily" in favor of a new trial to avoid a miscarriage of justice, this is because the Court excluded the most crucial evidence supporting the defense that the Guimaraeses reasonably believed their daughter was fleeing domestic violence, and the Court's instructions did not clarify the jury's inquiries.

### III. The Interest Of Justice Requires Granting a New Trial Because The Jury Did Not Hear The Defendants' Most Crucial Exculpatory Evidence And The Court's Supplementary Instructions Did Not Clarify The Jury's Confusion.

Under Rule 33, this Court has equally broad powers to examine errors which may have occurred during the trial. The Defendants have the burden to show: (1) some error was in fact

---

[11] *See* Appendix C.

[12] *See* Appendix C.

[13] *See Tarango*, 396 F.3d at 672, *Wall*, 389 F.3d at 465-66; *Simmons,* 714 F.2d at 31.

[14] *Herrera*, 559 F.3d at 302-03 ("The district court was within its discretion in conditionally granting a new trial. Although the evidence is sufficient to support a conviction, the court cautiously reweighed it and found it preponderated heavily against the guilty verdict. In doing so, 'the court sits as a thirteenth juror.'"); *Turner*, 490 F. Supp. at 593.

committed and, (2) such error was prejudicial to them.[15] Even then, such error may be disregarded as harmless unless it affected their "substantial rights" and the fairness of the trial.[16] The test of whether an error is of sufficient magnitude to warrant a new trial is whether this Court can conclude with a fair assurance, after carefully examining all of the facts of the case, that the verdict was substantially swayed by the error.[17] The factors considered are: (1) the closeness of the case; (2) the centrality of the issue affected by the error; and, (3) the steps taken to mitigate the effect of the error.[18]

Here, the evidence that Marcelle Guimaraes suffered domestic violence and that her parents reasonably believed that she fled to Brazil and remained there because of domestic violence is virtually unrebutted.[19] But perhaps the jury did not understand how central Mr. and Mrs. Guimaraes's reasonable belief was to the defensive case or how that belief exonerates them even if the jury also thought mutual combat existed in the marriage. Not only was the defense's crucial evidence of why the Guimaraeses believed that their daughter was fleeing domestic violence excluded, but, when the jury expressed its confusion concerning "mutual combat" and "domestic violence," the Court declined to answer their questions. Instead, the jury was allowed to return a verdict based on a false premise that if mutual combat existed in the marriage, then Marcelle Guimaraes's parents could not have believed that their daughter suffered domestic violence. In sum, the hearsay rule and the unanswered jury questions led to a miscarriage of justice and the lack of a fair trial.

---

[15] *United States v. Simms,* 508 F. Supp. 1188, 1203 (W.D. La. 1980) (defendant entitled to new trial based on error in jury instructions).

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *See* Docket No. 136, Exhibits 4, 5, 6, 7, 8, 9, and 10.

In *Chambers v. Mississippi,*[20] the Supreme Court concluded that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." That Court has also explained that restrictions on the defendant's right to present relevant evidence "may not be arbitrary or disproportionate to the purposes they are designed to serve."[21]

The Court exclude three items of crucial evidence supporting the defense that Mr. and Mrs. Guimaraes reasonably believed that their daughter had fled domestic violence when she stayed in Brazil with her son after the Rule 11 agreement expired. Furthermore, the jury was confused about the nature of that affirmative defense, so it sent three questions asking the Court to address that confusion. But the Court declined to answer directly, thereby allowing the jury to come to an incorrect verdict based upon an incorrect assumption about the law. These four issues, although distinct and independent, acted together and cumulatively to deny Mr. and Mrs. Guimaraes a fair trial.[22] Although each of those errors individually was harmful to the Defendants' rights, their synergistic effect–as they were all related to the same topic of domestic violence–was to create a miscarriage of justice which requires a new trial.[23]

---

[20] 410 U.S. 284, 302 (1973).

[21] *Rock v. Arkansas*, 483 U.S. 44, 56 (1987).

[22] *See United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998) ("an aggregation of non-reversible errors (*i.e.*, plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial.").

[23] *Id.* ("synergistic effect" of a combination of errors and improprieties may cumulatively deny defendant's right to a fair trial, but not in that particular case); *see United States v. Johnson*, 127 F.3d 380, 402 (5th Cir. 1997) (reversing conviction based on cumulative effect of various trial errors); *United States v. Riddle*, 103 F.3d 423, 434-35 (5th Cir. 1997) (reversing defendant's bank fraud conviction because of cumulative effect of four inter-related evidentiary errors without expressing opinion as to whether any one of them, alone, would require reversal).

1.  *Marcelle Guimaraes' Affidavit attached to her divorce petition should have been admitted for the non-hearsay purpose for which it was offered.*

The Defendants repeatedly attempted to introduce Defense Exhibit 16-A, the entire second divorce petition, including Marcelle Guimaraes's affidavit detailing domestic violence. While the entire document was an out-of-court statement, it was not offered for the truth of the matters asserted in that document. The affidavit was offered to show the state of mind of Mr. and Mrs. Guimaraes on the date that they helped her file that divorce petition in December 2012,[24] and at all times since then. The crucial issue at trial was: Did Mr. and Mrs. Guimaraes reasonably believe that Marcelle Guimaraes was fleeing domestic violence when she left Texas in July 2013 and stayed in Brazil thereafter? The most important part of the affidavit states:

> Respondent, CHRISTOPHER SCOTT BRANN, has been verbally and physically abusive to me. He has called me derogatory names and withheld personal items from me such as my telephone so that I cannot contact third parties when I am in need of doing so. Respondent . . . has refused to let me leave the martial home by obstructing my ability to exit out of a door. Respondent . . . has also pulled my hair, hit me in the face and head with his hand, and has pushed me on to the floor and the bed. . . . [He] has pushed me so hard that he put me through the sheet rock of a wall in our home. See attached Exhibit 4 which is a copy of my medical record evidencing a bruise on my jaw and an abrasion on my face. See also attached Exhibit 5 which are photographs of the wall [He] threw me into.[25]

It does not matter if Marcelle Guimaraes's affidavit is true or false. What does matter is Mr. and Mrs. Guimaraes's state of mind when they read or heard that affidavit–did *they* believe her? Did *they* think she was a victim of domestic abuse? Would reasonable parents in their position at the time that they heard this information believe that their daughter was a victim of

---

[24] The trial testimony showed that it was shortly before that date, when Mr. Guimaraes was with Marcelle Guimaraes at her home, that Dr. Brann scared them so much by opening the garage door at night they called the police to report him as a potential burglar. *See* Appendix D. Regardless of whatever innocent motives Dr. Brann may have actually had, what matters is the mind-set of both Marcelle Guimaraes and her parents at the time of this event and afterwards. This event that triggered Marcelle Guimaraes's willingness to go public with her allegations of physical, emotional, and psychological abuse and of Dr. Brann's obsession with pornography and file an amended divorce petition. *See* Appendix A.

[25] DX016-A Affidavit & Exhibits 4 & 5 (attached as Appendix A).

7

domestic violence? As Professor McCormick explains "[u]tterances and writings offered to show effect on hearer or reader" are not offered for a hearsay purpose and do "not depend on the truth of the statement."[26] They were admissible for the purpose offered.

The Court also erred by excluding this crucial evidence under Rule 403, on the grounds that DX016-A was too prejudicial for the jury's eyes.[27]

Fed. R. Evid. 403 states that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of" unfair prejudice. (emphasis added). The Fifth Circuit has held that a district court's exclusion of evidence under Rule 403 must be "cautious and sparing."[28] When affirming a district court's decision to allow into evidence "gross, distasteful and disturbing" photographs of a homicide scene, the Fifth Circuit in *McRae* held that relevant evidence "is inherently prejudicial; but it is only Unfair prejudice, Substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403."[29] In *McRae*, the Fifth Circuit affirmed the district court's evidentiary ruling allowing in disturbing photographs because the shots helped established elements of the offense such as the victim's position "and

---

[26] McCormick on Evidence §249, 733-34 (3d ed. 1984) ("When it is proved that D made a statement to X, with the purpose of showing the probable state of mind thereby induced in X, such as being put on notice or having knowledge, or motive, or to show the information which X had as bearing on the reasonableness or good faith or voluntariness of the subsequent conduct of X, or anxiety, the evidence is not subject to attack as hearsay.").

[27] The district court offered several rulings on DX016-A because Defendants offered the exhibit through several witnesses and the Government repeatedly objected. Initially, in Dr. Brann and Jared Woodfill's testimony, the Court excluded the evidence on hearsay grounds. *See* Appendix H-1. Later, during the testimony of Mr. Ramos, the Court excluded the evidence under Rule 403, without reference to the previous hearsay ruling. *See* Appendix H-2. Defendants respectfully disagree with both rulings as the exhibit was not offered for the truth of the matter nor was its probative value substantially outweighed by unfair prejudice due to pornographic pictures in a small portion of the exhibit.

[28] *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979) (capitalization of words in original decision). Additionally, trial courts in criminal matters generally apply Rule 403's prejudice standard when the proposed evidence would unfairly prejudice a defendant, not a Government witness. *United States v. Townsend*, 31 F.3d 262, 270 (5th Cir. 1994); *United States v. Patterson*, 431 F.3d 832, 839-40 (5th Cir. 2005).

[29] *McRae*, 593 F.2d at 707.

8

that of the rifle when it was fired, as bearing on [the] defense of accident."[30] In reaching its conclusion, the Fifth Circuit noted that that Rule 403's "major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."[31]

Here, we have a situation similar to *McRae*. Defendants repeatedly sought to enter into evidence DX016-A because it directly related to Defendants' affirmative defense and the exhibit had significant probative value. This document, a public pleading previously filed in the Harris County Family Court,[32] contained detailed allegations of domestic violence committed against Marcelle Guimaraes, her visit to medical personnel for treatment from such violence, and copies of threatening text messages sent by Dr. Brann to Marcelle Guimaraes. The allegations contained in this public document are the very sum and substance of the affirmative defense the Guimaraes raised during trial.

Yes, the affidavit contained Marcelle Guimaraes's allegations, and exhibits, about her husband's pornography addiction. But, as trial testimony demonstrated, this addiction was at the core of what the couple fought about and it is what led to violent fights within their marriage.[33] Thus, the allegations and exhibits about pornography had probative value to the affirmative defense and this probative value was not substantially outweighed by unfair prejudice to a Government witness.[34]

---

[30] *Id*.

[31] *Id.* (emphasis added).

[32] *See* Docket No. 2012-53837, Harris County, Texas, Civil Courts. Appendix A, which is DX16-A, bears the "Filed" stamp from this public record.

[33] *See* Appendix I.

[34] The Court's ruling under Rule 403 was imprecise as to whom the exhibit would unfairly prejudice. *See* Appendix H-2 at p. 6-7.

9

Furthermore, the extent and detail of the allegations made by Marcelle Guimaraes were crucial to establishing the defense of her parents. These claims, and assertions made in other legal documents excluded by the Court, served as the very basis for Mr. and Mrs. Guimaraes's reasonable belief that their daughter had fled from domestic violence. By excluding DX016-A, the jury was unable to see the full panoply of information that Marcelle Guimaraes had shared with her parents in December 2012, which in turn formed the basis for their belief about the domestic violence and arguments in their daughter's marriage.

Finally, DX016-A, and all of its exhibits, constitutes a public record, which any juror could readily access via the Harris County District Court Clerk's on-line records. It strains logic to understand how the probative value of this public record, previously filed in the divorce case from which this criminal matter directly derived, could be substantially outweighed by unfair prejudice to Dr. Brann, a Government witness.

DX016-A had probative value for Defendants' defense, and this value was not substantially outweighed by unfair prejudice to a Government witness due to a few pornographic photos. Under Rule 403 and the Fifth Circuit's standard in *McRae*, the Court should not have excluded the exhibit and the jury should have been able to understand the depth and import of Marcelle Guimaraes's allegations made in DX016-A.

    2.    *Marcelle Guimaraes's Divorce Discovery Responses*

Exactly the same is true of DX022, Marcelle Guimaraes's divorce discovery responses in which she described Dr. Brann as an admitted "sex addict" who had a "controlling personality" and was a "compulsive" liar.[35] She said that she "could not continue in the abusive, violent

---

[35] Only the cover and pertinent pages of DX022 are attached as Appendix B.

10

relationship."[36] She stated that Dr. Brann "has been violent on several occasions and broken several TVs, Cellular phones and computers.  He has also struck [Marcelle Guimaraes] thrown her to the floor, through a wall, even hit her when she was pregnant and in front of her child."[37]

These allegations may or may not be true; that does not matter. This is because the statements are highly probative of her parents' state of mind and whether they were thinking, "our daughter is fleeing with her son from domestic violence."  And was that state of mind reasonable given the information that they acted upon?[38]  This is precisely the argument that the Government routinely makes when it offers out-of-court statements (usually by a confidential informant ("C.I") as "information upon which the officer acted" and to explain the reasonableness of what he did based on that information.[39]  These discovery responses were admissible for precisely the reasons that they were offered at trial—to show Mr. and Mrs. Guimaraeses' "our daughter is fleeing from domestic violence" state of mind and its reasonableness from early December 2012 forward.

---

[36] *Id.* at DX022.016

[37] DX022.023. Marcelle Guimaraes also stated that Dr. Brann "committed acts that rise to the level of family violence," and outlined a series of them.  DX022.027-29.

[38] *See United States v. Kohan*, 806 F.2d 18, 21-22 (2d Cir. 1986) (in bank-fraud prosecution, statements made to defendant were admissible to show defendant believed those statements and were circumstantial evidence of his state of mind and  lack of specific intent to commit crime); *United States v. Cantu*, 876 F.2d 1134, 1137 (5th Cir. 1989) (citing *Kohan* and reversing defendant's drug conviction when trial court refuse to admit C.I.'s out-of-court statements to defendant offered to show entrapment; statements were not offered for their truth but to show C.I.'s persistence in convincing defendant to sell drugs); *United States v. Certified Environmental Serv., Inc.,* 753 F.3d 72, 89 (2d Cir. 2014) (citing *Kohan* and stating that out-of-court statements "were not offered for their truth, but for their effect upon the defendants' state of mind, which was very much in dispute" and "they provided a good-faith basis for the defendants' actions[.]").

In *Certified Environmental*, the Second Circuit rejected the government's argument that the statements, made five years before the conspiracy was alleged to have started, were too remote to be probative, noting that "our case law recognizes the possibility that an expression of state of mind on one occasion may be relevant to state of mind at a later time where the statement reflects a 'continuous mental process.'" *Id.* (quoting *United States v. Farhane*, 634 F.3d 127, 172 (2d Cir.2011) (Raggi, J., concurring)).

[39] McCormick, *ibid*. ("In criminal cases, an arresting or investigating officer should not be put in the false position of seeming to have just happened upon the scene; he should be allowed some explanation of his presence and conduct.").

Even Dr. Brann agreed that Marcelle Guimaraes's parents would reasonably believe that she was a victim of domestic violence based upon what they had seen, heard, and read.[40]

3. *Dr. Brann's threatening voicemail was admissible as a non-hearsay threat and additional circumstantial evidence of the Guimaraes's state-of-mind.*

DX328, a voicemail message–Dr. Brann admitted it was his voice on the message but he could not "recall" leaving that specific message[41]– from Dr. Brann's phone number to Marcelle Guimaraes's phone number on July 29, 2012,[42] which stated:

> You better answer the goddamn fucking phone, Marcelle. I swear to God I'm going to fucking destroy you if you don't answer the goddamn phone. You leave my child alone. I'll fuck you up.[43]

Obviously the voicemail was not offered for the truth that Dr. Brann "fucked" Marcelle up or "destroyed" her. It was offered as a verbal act, a "threat" which is not hearsay. In fact, "threats are 'paradigmatic nonhearsay.'"[44] It was probative to show that Marcelle Guimaraes feared Dr.

---

[40] Docket No. 136, Exhibit 10.

[41] *See* Appendix E.

[42] *See* Appendix E.

[43] *See* Appendix F. The words on paper do not do justice to this voicemail–the angry, menacing tone of voice–is not that of the wide-eyed, gentle-natured witness Dr. Brann. Dr. Brann recognized and knew his own voice, he just couldn't recall making that specific threatening voicemail. Under Fed. R. Evid.104(b), conditional relevancy, if a reasonable juror could conclude that a voicemail was made by a specific person, the jury is entitled to hear that voicemail and make the decision themselves whether or not the specific person spoke those words. *United States v. Silker*, 751 F.2d 477, 496-500 (2d Cir. 1984) (in prosecution for bank embezzlement, trial judge properly admitted audiotaped conversation allegedly involving defendant under Rule 104(b) because a reasonable fact finder could conclude that the defendant was one of the speakers); *United States v. Branch,* 970 F.2d 1368, 1370-71 (4th Cir. 1992) (in prosecution for drugs and tax evasion, trial judge properly admitted tape recordings authenticated during an in camera hearing; "[r]esolution of whether evidence is authentic calls for a factual determination by the jury, and admissibility, therefore, is governed by the procedure set forth in Federal Rule of Evidence 104(b) relating to matters of conditional relevance generally. Before admitting evidence for consideration by the jury, the district court must determine whether its proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic. Although the district court is charged with making this preliminary determination, because authentication is essentially a question of conditional relevancy, the jury ultimately resolves whether evidence admitted for its consideration is that which the proponent claims." (internal citations, quotation marks, and footnote omitted)). The fact that the witness "does not recall" the voicemail is not determinative. The jury may assess the witness's credibility, particularly when he has admitted that it is his voice.

[44] *United States v. Jones*, 663 F.2d 567, (5th Cir. 1981) (in prosecution for threatening court officers, threatening words were "paradigmatic nonhearsay"); *United States v. Wright*, 783 F.2d 1091, 1098 (D.C. Cir. 1986) (error to exclude as hearsay the contents of an anonymous telephone threat to the defendant offered not for its truth but to

12

Brann and that her state of mind was such as to make her believe that she could be the subject of domestic violence. And, importantly, it is circumstantial evidence that she shared this voicemail with her parents and that their state of mind was also fear of domestic violence against their daughter.

4. *The Failure to Respond Adequately to the Jury's Questions Led the Jury to Believe that "Mutual Combat" and "Domestic Violence" Were Mutually Exclusive.*

The jury obviously had difficulty understanding the instructions concerning the affirmative defense of fleeing from domestic violence. They sent out three different notes, each of which dealt with that issue:

1. What is the specific meaning of 'fleeing' domestic violence with regard to the state of mind of the person fleeing? If defendants flee the country for a completely different reason, but domestic violence had occurred in the relationship at some point in the past. Is that still fleeing?

2. If a person accused of aiding and abetting International Parental Kidnapping believed that the principal had been the victim of domestic violence at least once, at any point in the relationship, are they not guilty?

3. If mutual violence between the parties is found to have occurred, does this negate the affirmative defense of fleeing domestic violence by one party?[45]

These were all very legitimate questions and they demonstrate that the jury needed more guidance in resolving the relevant legal issues. They would not be helped by rereading the jury instructions until the cows came home. These questions simply were not answered by the jury instructions. The answer to Question 3 is a simple "No." The answer to Question 2 is a more nuanced one–"If the person accused of aiding and abetting International Parental Kidnapping reasonably believed that the principal had fled the jurisdiction or remained outside the jurisdiction because of a single incident or multiple incidents of domestic violence, they are not guilty." The answer to Question

---

show its effect on the defendant; harmless error because defendant testified to direct threats made to him by others).

[45] The three jury notes are attached as Appendix G.

13

1 is also simple: "The International Parental Kidnapping law does not define the term "fleeing" domestic violence; here you must use your own common sense and understanding of the ordinary meaning of that word in the context of 'domestic violence' to guide you in your deliberations, keeping in mind the purpose of the criminal law and of the affirmative defense."

Instead, the jury was left to flounder, alone, and without the necessary guidance in this most crucial aspect and element of the case. Mr. and Mrs. Guimaraes are either guilty or not guilty depending upon the response to those three, unanswered questions. Without guidance, the jury may well have concluded that their questions were just silly and had nothing to do with the case, so they should ignore the defense and return a guilty verdict. For that is what they did.

In sum, the jury's verdict was "substantially swayed" by these four distinct but intertwined errors under the *Kotteakos* harmless-error factors that the Court should consider:[46] (1) "the closeness of the case"–the evidence weighs heavily in favor of a finding that Marcelle Guimaraes' parents reasonably believed that she was fleeing domestic violence when she kept her son in Brazil past the scheduled return date; (2) "the centrality of the issue affected by the error"–the evidentiary and instruction errors all related to the crux of the defense, the parents' belief in the affirmative defense of "fleeing from domestic violence"; and (3) "the steps taken to mitigate the effect of the error"– no such steps were taken.[47] Under the *Kotteakos* standard as set out and applied in *Simms*, Mr. and Mrs. Guimaraes did not receive the fair trial in the American criminal justice system to which they were entitled.[48]

---

[46] *See Simms*, 508 F.Supp. at 1203 (citing *Kotteakos v. United States*, 328 U.S. 750, 765 (1946))

[47] *Id.*

[48] *See United States v. Huong Thi Kim Ly*, 798 F. Supp. 467, 479-80 (E.D.N.Y. 2011) (trial judge granted defendant's Rule 33 motion after he failed to give supplemental instructions to the jury concerning the definition of "domestic violence" in prosecution for International Parental Kidnapping when jury sent out question asking for definition; trial judge has simply told jury to use its common sense which "hamstrung" her ability to prove her defense).

We respectfully request that this Court grant them a new trial.

Respectfully submitted,
**RUSTY HARDIN & ASSOCIATES LLP**

By: */s/ Russell Hardin Jr.*
    Russell Hardin, Jr.
    State Bar No.  19424
    Jennifer E.  Brevorka
    State Bar No.  1725400
5 Houston Center
1401 McKinney Street Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800
rhardin@rustyhardin.com
jbrevorka@rustyhardin.com

*Attorneys for Defendant*
*CARLOS OTAVIO GUIMARAES*

**JONES WALKER, LLP**
811 Main Street, Suite 2900
Houston, Texas 77002
Phone: (713) 437-1811
Fax: (713) 437-1946

*/s/ James Ardoin (with permission)*
JAMES ARDOIN
State Bar No. 24045420
SDTX No. 571281
Email: jardoin@joneswalker.com

*Attorney for Defendant*
*JEMIMA DA ROCHA GUIMARAES*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct of the above and foregoing filed via the CM/ECF system which caused service upon all parties on June 7, 2018.

*/s/ Jennifer E. Brevorka*
JENNIFER E.  BREVORA
